IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEIRDRE BENIK ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| vs. ) | Case No.  2014 CV 3383 |
| ) | |
| VHS of ILLINOIS, INC., ) | |
| A Delaware corporation, ) | |
| ) | |
| Defendants. ) | |

## Complaint for Violation of the Americans with Disabilities Act and For Retaliatory Discharge.

Now comes DEIRDRE BENIK ("Plaintiff" or "BENIK" ), by and through her attorneys, HERMAN J. MARINO LTD., P.C., and for her complaint against VHS of ILLINOIS, INC., a Delaware corporation ("Defendant" or "VHS") for Violation of the Americans with Disabilities Act, 42 USC §12101 et seq., states as follows:

### JURISDICTION AND VENUE

1. Count I of this complaint arises under the Americans with Disabilities Act, 42 USC §12101 et seq. ("ADA"). Under the ADA it is unlawful for an employer to discriminate against anyone based upon a physical or mental disability.

2. This Court has Jurisdiction over this matter pursuant to the aforementioned statues and pursuant to 28 USC §1367, subject matter jurisdiction and supplemental jurisdiction over Counts II and III.

3. This Court has venue pursuant to 28 USC §1337 as all parties reside within the District and all events alleged occurred within the District.

1

4.     Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. §1391.

## PARTIES

5.     Deirdre Benik ("BENIK") is and at all relevant times was a citizen of the State of Illinois residing in Lisle, DuPage County, Illinois.

6.     The Defendant VHS of Illinois, Inc. ("VHS") is and at all relevant times was a Delaware corporation with its principal place of business in Tennessee.

7.     VHS all relevant times owned and operated a hospital in the state of Illinois under the assumed name "The MacNeal Hospital" (hereinafter "MacNeal") pursuant to the terms of the Illinois Hospital Licensing Act, 210 ILCS 85/1, et seq.

8.     At all relevant times, Defendant, through and under the auspices of MacNeal, owned and operated a therapeutic school in Westchester, Illinois commonly known as the MacNeal School (the "MacNeal School").

## ADMINISTRATIVE PREREQUISITES

9.     On or about November 25, 2013, BENIK filed a Charge of Discrimination with the Illinois Department of Human Rights, charging the Defendant with discriminating against the Plaintiff in violation of the Americans with Disabilities Act. A copy of the Charge of Discrimination is attached hereto as **Exhibit 1**.

10.    On or about February 4, 2014, BENIK filed a Charge of Discrimination with the Equal Employment Opportunity Commission charging the Defendant with discriminating against Plaintiff on the basis of disabilities discrimination. A copy of the Charge of Discrimination is attached hereto as **Exhibit 2**.

11. Upon information and belief, Defendant received notice of the Charge of Discrimination.

12. On February 26, 2014, the Equal Employment Opportunity Commission issued a Right to Sue letter, a copy of which is attached hereto as **Exhibit 3** received by BENIK on or about March 1, 2014.

**GENERAL ALLEGATIONS INCORPORATED BY REFERENCE INTO ALL COUNTS.**

13. BENIK was hired by the MacNeal School as a teacher August 20, 2001, and continued in a teaching position through the date of termination of her employment on August 8, 2013.

14. BENIK taught various grade levels and abilities including grades 5-7 and 2-4.

15. During her tenure, BENIK also had either 2 or 3 reading groups to oversee.

16. One of BENIK's duties was to regularly submit grades, narratives, IEP and progress reports for each student, which were originally handwritten.

17. Grades for each student were entered into a computer system known as the "Grade Keeper" and submitted for the review process.

18. The entry process for the grades is a long process that requires sitting in front of computer and entering the grade for the students on a "Grade Keeper" software application system.

19. The test and other grades and behavioral scores needed to be inputted daily/weekly for the various students in the classes.

20. These duties required BENIK to focus her eyes on the computer screen for extended periods of time and commencing in 2006, she began to experience pain and vision degradation.

21. During March 2006, BENIK's ophthalmologist and eye surgeon, Dr. Kenneth Resnick, diagnosed her with ocular degeneration.

22. BENIK's condition of ocular degeneration is and at all relevant times was a substantial limitation upon BENIK in a major life activity.

23. Further, BENIK's condition of ocular degeneration is a physical impairment that substantially limited her ability to complete the grade input as required for her job on the "Grade Keeper Software System" on the timetable required by the MacNeal School.

24. In March 2006, BENIK immediately advised her supervisors Ms. Hixon and Dr. Moore of this condition.

25. After treatment and final evaluation, BENIK asked Ms. Hixon and Dr. Moore for an accommodation of her work schedule, especially the schedule and timetable for the grade input on the Grade Keeper Software system.

26. BENIK had her regular formal evaluation with Mr. Hixon and Dr. Moore on March 6, 2006. During that meeting, BENIK advised Ms. Hixon and Dr. Moore of her diagnosis and explained the damage to her field of vision, and her doctor's recommendations for her ocular condition and that she would need an accommodation so that she could have assistance with the work load (read groups) and with inputting the grade and the progress notes.

4

27. Based upon that meeting, the Plan was for the MacNeal School to provide her with assistance for the inputting grades and progress reports as they became necessary.

28. As a result of the Plan recommended by Ms. Hixon and Dr. Moore, the MacNeal School believed BENIK to be substantially limited in a major life activity.

29. Under the Plan recommended by Ms. Hixon and Dr. Moore, to be implemented after 2006 and during the 2011 school year, the assistance for inputting grades was to be provided by the school secretary Ms. Washington as an accommodation to BENIK's disability.

30. For a brief period of time in 2011 Ms. Washington did assist in typing the grades.

31. However, Ms. Washington failed and refused to assist in the amendment of grades, BENIK was required to essentially do the grade input herself and Ms. Washington provided no assistance to BENIK.

32. Due to BENIK's ocular problems, and in order to meet the school deadlines for grade input, she was required to work evenings, at home, or over the weekends.

33. BENIK did in fact meet all her deadlines for submitting grades, progress reports and IEPs.

34. Due to BENIK's disability, the Defendant further agreed, as an accommodation to her disability, that during the 2012 school year she would be assigned only 2 reading groups.

5

35. However, in 2012, BENIK was assisting one classroom with varying levels grades and reading levels, but her duties included scribing and modifications for a student with physical disability and several behavioral pull out plans. This arrangement actually resulted in increasing BENIK's workload and added eye strain to her ocular condition.

36. Also, BENIK was now required to submit final grade reports each Monday morning, as a form of "probation," which resulted in accelerating the deadlines for her grade reports from that point forward for that school year.

37. This was done despite the fact that no such weekly deadlines were imposed upon other teachers in the school for that school year and despite BENIK's reported ocular condition and despite the prior plan for accommodating her condition.

38. BENIK's employment was terminated on August 8, 2013, which came as a complete surprise to her. Further, at the termination meeting she was told she was not on a 90 day review.

39. BENIK was told at termination that the nature of "her problems were all interpersonal/ behavioral issue."

40. The MacNeal School provided BENIK no ongoing accommodation for her ocular degeneration problem that had extended over a 7-year period which was consistently reported to school administration.

## COUNT I
## <u>VIOLATION OF THE AMERICAN WITH DISABILITIES ACT.</u>

1. Plaintiff restates paragraphs 1 through 40 of the General Allegations of this Complaint as though fully set forth as paragraph l of this Count I.

6

2.	At all relevant times, Defendant MacNeal School was an employer as defined under ADA §12111(5)(A) of the Act since it was in a business that affected commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in each of the following years: 2012, 2013 and 2014.

3.	Commencing on or about March 2006, and continuously after that date through the date of her termination, BENIK suffered from ocular degeneration, as described above, which is a disability and was disabled within the meaning of ADA §12102.

4.	BENIK was a qualified individual as defined under ADA §12111 (a) of the ADA because with reasonable accommodation she could perform the essential functions of her teaching position.

5.	Commencing on or about March, 2006, Defendant had an obligation to make a reasonable accommodation to permit BENIK to perform the essential functions of her employment position.

6.	BENIK's condition of ocular degeneration is and at all relevant times was a substantial limitation upon BENIK in a major life activity.

7.	Further, BENIK's condition of ocular degeneration is a physical impairment that substantially limited her ability to complete the grade input as required for her job on the rigorous timetable for grade input on the "Grade Keeper Software System" required by the MacNeal School administrators.

8.	The Defendant initially made such a reasonable accommodation commencing in March 2006, by providing BENIK with assistance in preparing and submitting her grade reports.

9. After treatment and final evaluation, BENIK asked Ms. Hixon and Dr. Moore for an accommodation of her work schedule, especially the schedule and timetable for the grade input on the Grade Keeper Software system.

10. BENIK had her regular formal evaluation with Ms. Hixon and Dr. Moore on March 6, 2006. During that meeting, BENIK advised Hixon and Moore of her diagnosis and explained the damage to her field of vision, and her doctor's recommendations for her ocular condition and that she would need an accommodation so that she could have assistance with the work load (read groups) and with inputting the grade and the progress notes.

11. Based upon that meeting, the Plan was for the MacNeal School to provide her with assistance for the inputting grades and progress reports as they became necessary.

12. As a result of the Plan recommended by Ms. Hixon and Dr. Moore, the MacNeal School believed BENIK to be substantially limited in a major life activity.

13. However, commencing during the 2012 school year, the Defendant abandoned its initial plan for reasonable accommodations and from that point on, through the date of BENIK's termination, the Defendant failed and refused to provide a reasonable accommodation for the Plaintiff.

14. Under the ADA, the Defendant had an obligation to make reasonable accommodations for the Plaintiff including but not limited to providing for one or more of the following;

>  Job restructuring, part-time or modified work schedules, reassignment to a vacant position acquisition or modification of equipment or devices, appropriate

    adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 USC §12111(9)(B)

15. The Defendant failed and refused to make a reasonable accommodation for BENIK as defined under the ADA.

16. BENIK would not have been terminated had the Defendant continued with its plan of implementing reasonable accommodations for BENIK's disability.

**WHEREFORE,** the Plaintiff DEIRDRE BENIK, prays this Honorable Court will enter into judgment in her favor and against the Defendant, VHS OF ILLINOIS, INC., d/b/a The MacNeal School, including:

    a. Compensatory damages;

    b. Liquidated damages:

    c. Punitive damages:

    d. Plaintiff's reasonable attorney's fees and costs;

    e. Any and all other remedies available under the Americans with Disabilities Act; and

    f. Such other and further relief as this Court deems just and equitable.

**COUNT II**
**RETALIATORY DISCHARGE**

1. Plaintiff restates and realleges Paragraphs 1-40, both inclusive, of the general allegations set forth above, as though fully set forth as Paragraph 1 of this Count II.

2. Plaintiff restates and realleges Paragraphs 1-16, both inclusive, of Count I of this Complaint, as though fully set forth as Paragraph 2 of this Count II.

3. The Defendant's termination of BENIK was in retaliation for her reporting her disability to the Defendant and seeking a reasonable accommodation and asserted her other rights under the ADA.

4. The Defendant's termination of BENIK was motivated by Defendant's desire to retaliate against Plaintiff.

5. As a proximate cause of Defendant's wrongful retaliatory termination of her employment, Plaintiff has been damaged in excess of $75,000 which damages would not have been incurred if not for the wrongful actions of the Defendant as set forth herein.

6. VHS's actions in retaliating against Plaintiff were intentional, arbitrary and capricious, willful and wanton and each were engaged in for the purpose of causing damage to Plaintiff.

**WHEREFORE**, PLAINTIFF DEIRDRE BENIK demands compensatory damages from the DEFENDANT VHS OF ILLINOIS, INC., a Delaware Corporation, in the amount not less than $75,000 or such other amount to be awarded by the jury. PLAINTIFF also demands an award of punitive damages against VHS OF ILLINOIS, INC.; and an award of such further and other relief this Court deems equitable and just.

### COUNT III
### CLAIM FOR *RESPONDEAT SUPERIOR*

1. Plaintiff restates and realleges Paragraphs 1-40, both inclusive, of General Allegations of this Complaint, as though fully set forth as Paragraph 1 of this Count III.

2. Plaintiff restates and realleges Paragraphs 1-16, both inclusive, of Count I of this Complaint, as though fully set forth as Paragraph 2 of this Count III.

3. Plaintiff restates and realleges Paragraphs 1-6, both inclusive, of Count II of this Complaint, as though fully set forth as Paragraph 3 of this Count III.

4. Immediately upon her termination, BENIK gave notice of the actions of the MacNeal School to Defendant VHS of Illinois, Inc.

5. Despite being provided notice, Defendant, VHS of Illinois, Inc. took no action to correct or prevent the wrongful acts of McNeal School as alleged herein. Accordingly, Defendant VHS of Illinois Inc. has adopted and ratified the acts errors and omissions of the MacNeal School as herein before alleged.

6. The aforesaid acts of the agents and employees of the MacNeal School were in the scope of their employment and therefore the Defendant VHS OF ILLINOIS, INC., as principal, is liable for the actions of its agent(s) under the doctrine of *respondent superior*.

7. As a direct and proximate result of the aforesaid acts, errors and omissions as hereinbefore alleged, BENIK suffered damages as hereinbefore alleged.

**WHEREFORE,** should the agents and employees of the MacNeal School be found liable for any claims alleged herein, Plaintiff demands judgment against Defendant VHS OF ILLINOIS, INC.; and such other relief as this Court deems equitable.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all questions of fact.

                                   Respectfully submitted,
                                   **DEIRDRE BENIK,** Plaintiff
                                   By:         s/ Herman J. Marino
                                                    One of its attorneys

Herman J. Marino Ltd., P.C.
Attorney for Plaintiff Deirdre Benik
53 West Jackson Boulevard, Suite 1557
Chicago, Illinois. 60604

312-347-9990 // 312-347-9992 (FAX)
hjmarino@marinotaxlaw.com